1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ANN JOHNSON, AS THE REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE ROYAL CARIBBEAN CRUISES LTD. RETIREMENT SAVINGS PLAN, | Case No.: 2:17-cv-01266-RAJ |
| Plaintiffs, | **COMPLAINT – CLASS ACTION** |
| v. | |
| RUSSELL INVESTMENT MANAGEMENT LLC, | |
| Defendant. | |

COMPLAINT - 1
CASE NO.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

1

## NATURE OF THE ACTION

2      1.      Plaintiff Ann Johnson ("Plaintiff"), as the representative of the class defined herein

3  and the Royal Caribbean Cruises Ltd. Retirement Savings Plan ("Plan"), brings this action against

4  Russell Investment Management LLC ("Russell" or "Defendant") for breach of its fiduciary duties

5  under the Employee Retirement Income Security Act ("ERISA"). As described herein, Russell

6  obtained fiduciary control of the Plan's investment menu in late 2015. Upon doing so, Russell

7  immediately selected a lineup consisting exclusively of its own poorly performing proprietary

8  funds, and replaced the Plan's industry-leading target date funds managed by Vanguard with its

9  own proprietary target date funds. This self-serving swap was disastrous for the Plan and cost

10  participants millions of dollars in lost investment earnings through the middle of 2019, when

11  Russell was removed as the Plan's investment manager after less than four years in the role.

12  Plaintiff brings this action to recover these losses and obtain equitable relief and other appropriate

13  relief as provided by ERISA.

14

## PRELIMINARY STATEMENT

15      2.      The Plan holds the retirement savings of more than 7,000 non-union employees of

16  Royal Caribbean Cruises Ltd. The Plan was previously known as the Royal Caribbean Cruises Ltd

17  401(k) Plan and held $92 million as of year-end 2014. In 2015, the Royal Caribbean Cruises Ltd.

18  Et Al Retirement Plan merged with and became part of the Royal Caribbean Cruises Ltd. 401(k)

19  Plan, which was renamed the Royal Caribbean Cruises Ltd. Retirement Savings Plan. The merger

20  more than tripled the Plan's assets as of year-end 2015.

21      3.      The sudden increase in assets made the Plan a more attractive target for investment

22  managers like Russell, who was looking to gain assets to boost its struggling proprietary funds.

23  When Russell obtained fiduciary control of the Plan's investment menu in late 2015, it

24  immediately replaced the Plan's menu of twenty funds (which were managed by a variety of

25

26

COMPLAINT - 2
CASE NO.

investment managers) with a menu consisting exclusively of its own proprietary funds, and subsequently transferred over 99% of the Plan's assets into its own funds.[1]

4.     There was no participant-focused justification for Russell's swap. Russell was not a highly regarded fund manager, having ranked dead last out of 48 companies in Barron's annual fund manager rankings as of year-end 2014. Yet, Russell chose itself over other fund managers for each of the Plan's funds in 2015, and replaced Vanguard's industry-leading target date funds with its own struggling target date funds. Moreover, Russell did so despite the fact that the Vanguard funds performed better than the Russell funds over both short-term and long-term periods prior to the transfer while exhibiting similar or lower levels of risk.

5.     While participants suffered, Russell reaped the rewards. By adding over $300 million in new investment from the Plan, Russell was able to prop up its struggling proprietary funds, which were losing other investors amid Russell's performance and reputational shortcomings. Russell's funds continued to underperform until Russell was eventually removed as the Plan's outsourced investment fiduciary in the middle of 2019, less than four years after assuming the role. In the meantime, the Plan suffered millions in lost investment returns as a result of Russell selecting an all-proprietary lineup for Plan participants.

6.     As the Plan's outsourced investment fiduciary, with discretionary control over the Plan's investments, Russell was under a fiduciary obligation under ERISA to set aside all self-interest and to act prudently and for the exclusive benefit of the Plan's participants. *See Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) ("[P]lan trustees [may] delegate investment authority to a professional advisor *who then becomes a fiduciary with a duty of care and duty of loyalty to the plan*") (emphasis added). These fiduciary duties are the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (citation omitted). Russell's

---

[1] The Federated Capital Preservation Fund remained in the Plan as of year-end 2015, but held less than 1% of Plan assets. The Federated fund was removed in 2016.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

conflicted judgment breached multiple ERISA fiduciary standards, including its duty of loyalty to Plan participants and its duty of prudence.

7.    Plaintiff brings this action under ERISA to recover the Plan's losses, prevent further mismanagement of the Plan, and obtain other appropriate relief.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

9.    Venue is proper in this district under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the breaches of fiduciary duties giving rise to this action occurred, and where Defendants may be found.

## PARTIES

### PLAINTIFF

10.    Plaintiff Ann Johnson resides in Coral Gables, Florida. Plaintiff Johnson is a current participant in the Plan, and was invested in Russell funds (including the Russell target date fund corresponding to her age) during the proposed class period. Plaintiff has suffered investment losses as a result of Defendant's fiduciary breaches and unlawful conduct as alleged in this Complaint.

### THE PLAN

11.    The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution" or "individual account" plan within the meaning of 29 U.S.C. § 1002(34). The Plan is also an "ERISA section 404(c) plan," which means that participants may choose between investment options (called "designated investment alternatives") made available by the Plan's fiduciaries. *See* 29 C.F.R. § 2550.404c-1(a)(1) & (e)(4). In such plans, the set of investment options made available by a plan's fiduciaries is called the "investment menu." *E.g.,* DEP'T OF LABOR, *Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 72846, 72863 (Nov. 13, 2020) ("[W]hen assembling, choosing, or modifying an *investment menu* for participants' investment choices …") (emphasis added).

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

12.     As a defined contribution plan, the Plan provides retirement benefits to participants that are "limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *See Tibble v. Edison Intern.*, 575 U.S. 523, 525 (2015). Thus, the investment options made available by the Plan's fiduciaries are critical to participants' retirement outcomes.[2]

13.     As of the end of 2019, the Plan had more than 7,000 participants and roughly $500 million in assets.

### DEFENDANT

14.     Defendant Russell Investment Management LLC is a registered investment adviser firm based in Seattle.[3] Russell and its affiliates market a number of proprietary investment products, including mutual funds, collective trusts, and other investment funds. Russell also offers a "fiduciary outsourcing" service to defined contribution retirement plans. Through its fiduciary outsourcing service, Russell takes control of plan investment menus from plan sponsors, taking on the fiduciary responsibility to prudently select and monitor the investment options available to plan participants.

15.     Since its engagement as the Plan's fiduciary outsourcing partner, Russell has exercised control over the selection and monitoring of the fund options available on the Plan's investment menu. This is an "investment manager" role as defined by 29 U.S.C. § 1002(38) of

---

[2] Defined contribution plans are distinct from "defined benefit" plans, as defined benefit plan participants receive fixed payouts that cannot be reduced based on the market performance of the underlying assets of their plan. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("Such a plan, as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment. … [T]he employer typically bears the entire investment risk and … must cover any underfunding as the result of a shortfall that may occur from the plan's investments.") (quotation marks and citations omitted); *see also Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1616 (2020) ("[P]articipants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to participants in a defined-contribution plan, and they possess no equitable or property interest in the plan[.]").

[3] Russell is not affiliated with the firm that maintains and publishes "Russell" indexes. Russell was divided from the indexing business and sold to an unaffiliated buyer in a transaction announced prior to Russell assuming the role of the Plan's investment fiduciary.

COMPLAINT - 5
CASE NO.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

ERISA, and therefore Russell is a fiduciary of the Plan under that section, as well as under 29 U.S.C. § 1002(21)(A)(i); *see also* 29 C.F.R. § 404a-1(d)(1) (confirming that "selection or retention of designated investment alternatives available to participants and beneficiaries in an individual account plan" is a fiduciary activity.)

## BACKGROUND

## ERISA FIDUCIARY DUTIES

16.    ERISA recognizes "that the continued well-being and security of millions of employees and their dependents are directly affected by [retirement] plans." 29 U.S.C. § 1001(a). "The principal object of the statute is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (citation omitted). The "crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators" and "ERISA was designed to prevent these abuses." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985) (citing extensive legislative history).

17.    To protect plan participants, ERISA incorporates the twin fiduciary duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1). These fiduciary duties are the "highest known to law." *Howard*, 100 F.3d at 1488.

18.    The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), with an "eye single" to the interests of such participants and beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "A fiduciary may not subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to other objectives, and may not sacrifice investment return or take on additional investment risk to promote non-pecuniary benefits or goals." 29 C.F.R. 2550.404a-1(c)(1); *see also* DEP'T OF LABOR, ERISA Adv. Op. 88-16A, 1988 WL 222716, at *3 (Dec. 19, 1988) ("A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.").

COMPLAINT - 6
CASE NO.

19.     The duty of prudence requires fiduciaries to exercise the "care, skill, prudence, and diligence" that a prudent person would utilize in managing a similar plan. 29 U.S.C. § 1104(a)(1)(B). To satisfy the duty of prudence with respect to an investment, a fiduciary must "employ[] appropriate methods to investigate the merits of the investment", *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983), including considering the "the risk of loss and opportunity for gain … associated with the investment … compared to the opportunity for gain … associated with reasonably available alternatives with similar risks". 29 C.F.R. § 2550.404a-1(a)(2)(i). Where a potential conflict of interest exists, fiduciaries must engage in an "intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Howard*, 100 F.3d at 1488–89.

20.     These fiduciary duties apply to both the selection and the ongoing monitoring and retention of investment options in a defined contribution plan's menu. *See* 29 C.F.R. 2550.404c-1(d)(2)(iv) (providing that, while participants choose between investment options, plan fiduciaries have a "duty to prudently select and monitor any … designated investment alternative offered under the plan"); 29 C.F.R. § 404a-1(d)(1) (confirming that ERISA fiduciary duties "apply to a fiduciary's selection or retention of designated investment alternatives available to participants and beneficiaries in an individual account plan"); *see also Tibble*, 575 U.S. at 529. ("[A] trustee has a continuing duty to monitor trust investments and remove imprudent ones … [that] exists separate and apart from the trustee's duty to exercise prudence in selecting investments[.]").

## DEFENDANT'S MISMANAGEMENT OF THE PLAN

### *RUSSELL'S SELF-SERVING PROMOTION OF ITS OWN FUNDS*

21.     Before Russell assumed control of the Plan's investment menu, the Plan contained twenty different investments managed by a variety of asset managers. Among those investments was a suite of industry-leading "target date" funds[4] managed by Vanguard.

---

[4] US DEP'T OF LABOR, *Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries* (Feb. 2013) ("TDFs offer a long-term investment strategy based on holding a mix of stocks, bonds and other investments … that automatically changes over time as the participant ages."), *available at*

COMPLAINT - 7
CASE NO.

22.     Immediately after Russell assumed the role of outsourced investment fiduciary, Russell replaced the entire Plan menu and transferred over 99% of the Plan's assets into its own struggling proprietary funds. As part of this transfer, Russell replaced a suite of Vanguard's industry-leading target date funds with its own target date funds.

23.     Replacing the Plan's investments *in toto* with an all-Russell menu was not prudent or in the best interest of participants. Russell was not held in high esteem within the investment management industry. According to Barron's annual rankings of mutual fund managers,[5] at the end of 2014 Russell ranked **51st out of 56** fund managers over the last five years and ***dead last out of 48*** managers over the last ten years.[6]

24.     Indeed, Russell itself was aware of its poor reputation and attempted to run from it. Before 2016, Russell branded each of its funds as "Russell" funds (e.g. "Russell Small Cap Fund") in the funds' public filings. Since 2016, Russell has removed the "Russell" title (e.g. "Small Cap Fund") in those public filings.

25.     It was especially inappropriate for Russell to replace the Vanguard target date funds in the Plan with its own line of proprietary target date funds. There was no reason for a prudent and loyal fiduciary to remove the Vanguard target date funds at all, let alone replace them with the Russell target date funds. The illustration below compares the performance of Vanguard's target date funds to Russell's target date funds leading up to year-end 2014 (the year before Russell assumed fiduciary control of the Plan's menu), by identifying (1) the fund that outperformed over each period, (2) the excess average annual return achieved by the outperforming fund, (3) the fund that exhibited lower risk (as measured by the standard deviation of monthly returns during the

---

https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf (last visited June 2, 2021).
[5] While the Russell funds in the Plan are held in a collective trust structure, the mutual fund rankings demonstrate Russell's inability to add value as an investment manager.
[6] Russell again came in dead last in 2015, ranking 52nd out of 52 managers over the last ten years.

COMPLAINT - 8
CASE NO.

period), and (4) the difference between standard deviations of the lower risk fund and the higher

risk fund.

### Illustration 1: Prior TDFs vs. Russell TDFs
*As of Year-End 2014*

| 2055 Fund | 3-Year | 5-Year[7] | Life of Russell Fund[8] |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.07%) | -- | Vanguard (+ 2.14%) |
| Lower Risk Fund | Vanguard (− .25%) | -- | Vanguard (− .25%) |

| 2050 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.04%) | Vanguard (+ 1.40%) | Vanguard (+ 1.38%) |
| Lower Risk Fund | Vanguard (− 0.21%) | Vanguard (− 0.53%) | Vanguard (− 1.08%) |

| 2045 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.09%) | Vanguard (+ 1.42%) | Vanguard (+ 1.53%) |
| Lower Risk Fund | Vanguard (− .15%) | Vanguard (− 0.49%) | Vanguard (− 1.09%) |

| 2040 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.03%) | Vanguard (+ 1.37%) | Vanguard (+ 1.11%) |
| Lower Risk Fund | Vanguard (− 0.20%) | Vanguard (− 0.52%) | Vanguard (− 1.16%) |

| 2035 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 1.41%) | Vanguard (+ 1.08%) | Vanguard (+ 1.20%) |
| Lower Risk Fund | Vanguard (− 0.63%) | Vanguard (− 0.77%) | Vanguard (− 1.25%) |

| 2030 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.09%) | Vanguard (+ 1.39%) | Vanguard (+ 1.35%) |
| Lower Risk Fund | Russell (− 0.03%) | Vanguard (− .81%) | Vanguard (− 1.75%) |

| 2025 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.67%) | Vanguard (+ 1.44%) | Vanguard (+ 1.27%) |
| Lower Risk Fund | Russell (− .82%) | Russell (− 0.75%) | Vanguard (− 0.16%) |

| 2020 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 3.26%) | Vanguard (+ 1.60%) | Vanguard (+ 0.79%) |
| Lower Risk Fund | Russell (− 1.12%) | Russell (− 1.55%) | Russell (− 0.80%) |

26.     Despite taking on less risk than the Russell funds the majority of the time, the

Vanguard funds outperformed the Russell funds over 3-years, 5-years, and since the Russell fund's

---

[7] The Russell 2055 Fund did not have five years of performance history as of year-end 2014.
[8] The Russell target date funds did not have ten years of performance history as of year-end 2014. This column represents the risk or return as measured from the date of the first full month that the Russell funds were in operation through year-end 2014.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

inception *for every vintage offered,* by at least **79 basis points**. Faced with these results, a prudent and objective fiduciary would not have replaced the Vanguard target date funds with Russell's target date funds in 2015. Nor would a prudent and objective fiduciary have chosen Russell's target date funds over parallel Vanguard funds if considering new investments for the Plan.

27.    Vanguard's target date funds were not the only choice a prudent fiduciary could have made. When Russell was removed as the Plan's investment manager in 2019, the Russell target date funds were replaced with another suite of target date funds managed by American Funds. Whether the Russell target date funds are compared to the target date funds in the Plan before Russell took control of the Plan's menu (Vanguard), the target date funds that replaced the Russell funds after Russell was removed as the Plan's investment manager (American Funds), or to a standard industry target date fund benchmark created by Standard & Poor's,[9] a prudent and objective fiduciary would not have selected the Russell target date funds for the Plan.

***Illustration 2: Prior TDFs, Current TDFs, and TDF Indexes vs. Russell TDFs***
*As of Year-End 2014*

| 2055 Fund | 3-Year | 5-Year | Life of Russell Fund[10] |
|---|---|---|---|
| American Funds | 16.51% | -- | 15.28% |
| Vanguard | 15.49% | -- | 14.24% |
| S&P Target Date Index | 15.20% | -- | 13.99% |
| Russell | 13.42% | -- | 12.10% |

| 2050 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.52% | 11.82% | 7.08% |
| Vanguard | 15.49% | 11.58% | 6.85% |
| S&P Target Date Index | 14.86% | 11.21% | 6.25% |
| Russell | 13.45% | 10.18% | 5.47% |

[9] The S&P Target Date Index represents a market consensus of asset class exposure and glide path across the universe of target date fund managers. The index is designed to help retirement plan fiduciaries screen, select, and monitor appropriate target date funds.

[10] The Russell Funds did not have ten years of performance history as of year-end 2014. This column represents the return as measured from the date of the first full month that the Russell funds were in operation through year-end 2014.

COMPLAINT - 10
CASE NO.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

| *2045 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.53% | 11.80% | 7.09% |
| Vanguard | 15.49% | 11.58% | 6.84% |
| S&P Target Date Index | 14.43% | 11.04% | 6.12% |
| Russell | 13.40% | 10.16% | 5.31% |

| *2040 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.50% | 11.79% | 6.63% |
| Vanguard | 15.48% | 11.57% | 5.78% |
| S&P Target Date Index | 13.96% | 10.81% | 5.12% |
| Russell | 13.45% | 10.20% | 4.67% |

| *2035 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.29% | 11.71% | 6.69% |
| Vanguard | 14.90% | 11.29% | 6.21% |
| S&P Target Date Index | 13.38% | 10.50% | 5.72% |
| Russell | 13.49% | 10.21% | 5.01% |

| *2030 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.15% | 11.72% | 6.55% |
| Vanguard | 13.84% | 10.76% | 5.45% |
| S&P Target Date Index | 12.60% | 10.07% | 5.07% |
| Russell | 11.75% | 9.37% | 4.10% |

| *2025 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 15.12% | 11.23% | 6.29% |
| Vanguard | 12.78% | 10.22% | 5.97% |
| S&P Target Date Index | 11.60% | 9.55% | 5.59% |
| Russell | 10.11% | 8.78% | 4.70% |

| *2020 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 12.70% | 10.00% | 5.56% |
| Vanguard | 11.71% | 9.67% | 5.51% |
| S&P Target Date Index | 10.57% | 8.95% | 4.99% |
| Russell | 8.45% | 8.07% | 4.71% |

28.     Russell yielded these deficient results—often underperforming Vanguard and

COMPLAINT - 11
CASE No.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

American Funds by 2-3% per year and the S&P target date indexes by about 1% per year—while taking on comparable and often higher levels of risk. Indeed, over each period, Russell's 2035, 2040, 2045, 2050, and 2055 funds exhibited higher risk (as measured by the standard deviation of returns) than the corresponding vintages from Vanguard and American Funds.

### RUSSELL LOOKED TO INCREASE ITS ASSET-BASE WHILE OTHER FIDUCIARIES FLED

29.    Prior to and during its time as the Plan's outsourced investment fiduciary, Russell's business was threatened by diminishing assets in the Russell funds. Maintaining asset levels is critical for fund managers. Managers charge fees and expenses as a percentage of the assets in the fund, so a fund's size determines the expense ratio the manager can offer in the marketplace. A decline in assets means that a fund must charge higher fees or reduce services to maintain the same level of profitability for the manager, or alternatively, the fund manager must subsidize the fund and accept a lower level of profits. Further, a competitive marketplace for fees leaves little room for managers to raise fees.[11] A material drop in assets therefore poses significant risks to the survival of a fund.

30.    Scale is especially critical for Russell's target date funds. Russell's target date funds are composed of a dozen underlying Russell funds. Therefore, a drop in assets in the Russell target date funds also reduces assets in a dozen other Russell funds.

31.    Russell's funds were at risk during its tenure as the Plan's investment fiduciary as fiduciaries of other large retirement plans withdrew their investments from the funds. After hitting a high mark in terms of assets around 2013, Russell started to lose investors in its target date funds, and assets in the funds started to decline. In 2014, Russell lost more than 30% of the assets in its target date funds when the funds' largest investor (which had more than $500 million in the funds) switched to Vanguard's target date funds. Other large investors left Russell's target date funds in

---

[11] *See* CALLAN INSTITUTE, 2019 Investment Management Fee Study ("[S]ustained downward pressure on both fee schedules and mandate sizes results in significantly lower dollar fees paid (manager revenue) per client."), *available at* https://www.callan.com/uploads/2020/05/0ce3d1da04c2c1d8e13a30a67dbdfabe/callan-2019-im-fee-study.pdf (last visited June 2, 2021).

COMPLAINT - 12
CASE NO.

subsequent years, including Russell's own employee plan, which withdrew its entire investment (around $130 million) from the funds in 2016. During 2017, four additional fiduciaries, representing twelve plans and over $450 million invested the funds, pulled their investments. The 2017 exodus included nearly half the target date funds' remaining investors and more than one-third of the reported assets as of year-end 2016. Five additional plans left the funds in 2018. During Russell's tenure, the Plan represented around 15%-20% of the assets in Russell's target date funds.

32.     Thus, while the change could not be justified based on prospective returns for participants, *see supra*, swapping the Plan's target date funds for its own target date funds and retaining those funds during its tenure gave Russell's funds a significant boost during a critical time of large investor outflows.

33.     The target date funds were not the only problematic funds in the Plan. No prudent and loyal fiduciary would have made an across-the-board decision to select an all-Russell lineup in late 2015, considering Russell's poor reputation and poor results as an investment manager. Additionally, had Russell been prudently monitoring the funds after its self-serving decision to add them to the Plan, it would have followed the lead of the numerous other fiduciaries that removed Russell funds from their plans. Although the Plan sponsor ultimately removed Russell as the Plan's outsourced investment fiduciary in mid-2019, Russell's self-serving fund choices had already cost participants millions of dollars in retirement savings. Upon Russell's removal as the Plan's investment fiduciary, the Russell funds were replaced[12] with a variety of funds managed by other companies, including Vanguard and American Funds.

## V.   PLAINTIFF LACKED KNOWLEDGE OF DEFENDANT'S FIDUCIARY MISCONDUCT

34.     Plaintiff did not have knowledge of all material facts (including, among other things, the poor performance of the Russell funds before they were added to the Plan; the performance of the Russell funds compared to the funds in the Plan before Russell's appointment

---

[12] Only the Russell Investment Contract Fund remained in the Plan as of year-end 2019. The Plan's form 5500s specify that Russell, as trustee, requires one-year advance notification for full redemption of a stable value fund like the Russell Investment Contract Fund.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

as investment manager; the performance of the Russell funds compared to other marketplace options available to the Plan; the risk assumed by Russell funds compared to other options available to the Plan; Russell's poor reputation as a fund manager; the importance of maintaining fund assets to Russell's business strategy; the migration of other fiduciaries from the Russell funds; Russell's conflicted role in recommending its own funds for the Plan as a supposedly "independent" investment manager; and the relative unpopularity of the Russell funds in the retirement plan marketplace and the investment marketplace overall) necessary to understand that Russell breached its fiduciary duties until shortly before this suit was filed. Further, Plaintiff did not have actual knowledge of the specifics of Russell's decision-making and monitoring processes with respect to the Plan, because this information is solely within the possession of Russell prior to discovery. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

### CLASS ACTION ALLEGATIONS

35.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to seek the remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks certification of this action as a class action pursuant to these statutory provisions and Fed. R. Civ. P. 23.

36.     Plaintiff asserts her claims against Russell on behalf of a class of participants and beneficiaries of the Plan defined as follows:[13]

> All participants and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan at any time from October 1, 2015 to the date Russell was removed as the Plan's investment manager.

37.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. During the putative class period, the Plan had roughly 7,000 participants.

---

[13] Plaintiff reserves the right to propose other or additional classes or subclasses in her motion for class certification or subsequent pleadings in this action.

COMPLAINT - 14
CASE NO.

38.    Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff participated in the Plan, was invested in Russell funds (including the Russell target date funds), and has suffered injuries as a result of Russell's mismanagement of the Plan. Russell treated Plaintiff consistent with other Class members with regard to the Plan. Russell managed the Plan as a single entity, and therefore Russell's imprudent decisions with respect to the Russell funds affected all Class members similarly.

39.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that she seeks to represent, and she has retained counsel experienced in complex class action litigation, including ERISA class action litigation. Plaintiff does not have any conflict of interest with any Class members that would impair or impede her ability to represent other Class members.

40.    Commonality: Common questions of law and fact exist as to all Class members, and predominate over any questions solely affecting individual Class members, including but not limited to:

a)    Whether Defendant is a fiduciary of the Plan, and the scope of its fiduciary duties;

b)    Whether Defendant breached its fiduciary duties under 29 U.S.C. § 1104 by engaging in the conduct described herein;

c)    The proper form of equitable and injunctive relief; and

d)    The proper measure of monetary relief.

41.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Russell would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Russell.

42.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court would be dispositive of non-party participants' interests. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Russell's conduct as described in this Complaint applied uniformly to all Class members. Class members do not have an interest in pursuing separate actions against Russell, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Russell by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Russell's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## COUNT I

### Breach of Duties of Loyalty and Prudence

### 29  U.S.C. § 1104

43.    Plaintiff repeats and re-alleges Paragraphs 1 through 42 of the Complaint as though fully set forth herein.

44.    Russell was a fiduciary of the Plan during the proposed class period under 29 U.S.C. § 1002(21) and 29 U.S.C. § 1002(38).

45.    ERISA imposed strict fiduciary duties of loyalty and prudence upon Russell in its administration of the Plan and its selection and monitoring of Plan investments. Section 404(a) of ERISA, 29 U.S.C. § 1104(a), provides:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

COMPLAINT - 16
CASE NO.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

    (A)    for the exclusive purpose of

        (i)    providing benefits to participants and their beneficiaries; and

        (ii)    defraying reasonable expenses of administering the plan; [and]

    (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

46.    These fiduciary duties are continuing in nature, and apply to both the selection of investments for the Plan and the subsequent monitoring, retention, removal, and replacement of those investment options. *Tibble*, 575 U.S. at 529.

47.    Russell breached its fiduciary duties by selecting the Russell funds for the Plan, transferring over $300 million in assets into the Russell funds, and retaining the funds throughout its tenure as the Plan's outsourced investment fiduciary. This was neither prudent nor in the interest of Plan participants and beneficiaries.

48.    A prudent fiduciary acting solely in the interest of Plan participants and beneficiaries would not have selected the Russell funds or mapped Plan assets into those funds. Moreover, a prudent and loyal fiduciary would not have retained Russell's inferior proprietary funds in the Plan's investment lineup.

49.    Russell's fiduciary breaches resulted in significant losses to the Plan, and Russell is liable for these losses under 29 U.S.C. §§ 1109(a) and 1132(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ann Johnson, as the Class representative, and on behalf of the Plan, prays for relief as follows:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

B. Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C. A declaration that Defendant has breached its fiduciary duties under ERISA;

D. An order compelling Defendant to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties described herein, and to restore the Plan to the position it would have been in but for this unlawful conduct;

E. Other equitable relief to redress Defendant's illegal practices and to enforce the provisions of ERISA as may be appropriate;

F. An award of pre-judgment interest;

G. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine;

H. An award of such other and further relief as the Court deems equitable and just.

Dated: June 7, 2021

**SCHROETER GOLDMARK & BENDER**
By:  *s/ Lindsay L. Halm*
Lindsay L. Halm, WSBA #20714
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone: 206-622-8000
Facsimile: 206-682-2305
halm@sgb-law.com


**NICHOLS KASTER, PLLP**
Paul J. Lukas, MN Bar No. 22084X*
Kai H. Richter, MN Bar No. 0296545*
Brock J. Specht, MN Bar No. 0388343*
Ben Bauer, MN Bar No. 0398853*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
krichter@nka.com
bspecht@nka.com
bbauer@nka.com

COMPLAINT - 18
CASE NO.

**WENZEL FENTON CABASSA, P.A.**
Brandon Hill, FL Bar No. 0037061*
1110 N Florida Avenue
Suite 300
Tampa, FL 33602
Telephone: 813-579-2483
Facsimile: 813-229-8712
bhill@wfclaw.com

**MORGAN & MORGAN**
Marc Edelman, FL Bar No. 0096342*
201 N. Franklin Street
7th Floor
Tampa, FL 33602
Telephone: 813-223-5505
Facsimile: 813-318-5162
medelman@forthepeople.com

*pro hac vice* motions forthcoming

ATTORNEYS FOR PLAINTIFF

COMPLAINT - 19
CASE NO.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402