THE HONORABLE RICARDO S. MARTINEZ

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

ANN JOHNSON, AS THE REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE ROYAL CARIBBEAN CRUISES LTD. RETIREMENT SAVINGS PLAN,

Plaintiffs,

v.

RUSSELL INVESTMENTS TRUST COMPANY (F/K/A RUSSELL TRUST COMPANY), ROYAL CARIBBEAN CRUISES LTD., AND ROYAL CARIBBEAN CRUISES LTD. INVESTMENT COMMITTEE

Defendants.

Case No.: 2:21-cv-00743-RSM

**AMENDED COMPLAINT**

**CLASS ACTION**

AMENDED COMPLAINT - 1
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

**NATURE OF THE ACTION**

1.    Plaintiff Ann Johnson ("Plaintiff"), as the representative of the class defined herein and the Royal Caribbean Cruises Ltd. Retirement Savings Plan ("Plan"), brings this action against Russell Investments Trust Company (f/k/a Russell Trust Company) ("Russell"), and Royal Caribbean Cruises Ltd. ("Royal Caribbean") and the Royal Caribbean Cruises Ltd. Investment Committee ("Investment Committee") (collectively, the "Royal Caribbean Defendants") (altogether, "Defendants") for breach of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). As described herein, Defendants breached their fiduciary duties in imprudently adopting and maintaining an investment lineup consisting exclusively of poorly performing proprietary funds affiliated with Russell (the "Russell funds"), and by replacing, among other funds, the Plan's industry-leading target date funds managed by Vanguard with Russell's own proprietary target date suite. While advantageous for Russell, this investment overhaul was disastrous for the Plan, and cost participants millions of dollars in lost investment earnings through the middle of 2019, when Russell was belatedly removed as the Plan's investment manager.

2.    Russell was the architect of this self-serving investment overhaul as the Plan's investment manager. However, the Royal Caribbean Defendants also bear responsibility for this misguided overhaul as they appointed Russell as the Plan's investment manager, failed to adequately monitor Russell, and failed to take any remedial action until 2019 despite having knowledge of the changes to the Plan's investment menu and despite the ongoing poor performance of the Russell funds. Further, Royal Caribbean also failed to adequately monitor the Investment Committee in its role as the Plan's named fiduciary.

3.    Plaintiff brings this action to remedy Defendants' fiduciary breaches, recover the Plan's losses, and obtain other appropriate relief as provided by ERISA.

**PRELIMINARY STATEMENT**

4.      The Plan holds the retirement savings of more than 7,000 non-union employees of Royal Caribbean Cruises Ltd. The Plan was previously known as the Royal Caribbean Cruises Ltd 401(k) Plan and held $92 million as of year-end 2014. In 2015, the Royal Caribbean Cruises Ltd. Et Al Retirement Plan merged with and became part of the Royal Caribbean Cruises Ltd. 401(k) Plan, which was renamed the Royal Caribbean Cruises Ltd. Retirement Savings Plan. The merger more than tripled the Plan's assets as of year-end 2015.

5.      The sudden increase in assets made the Plan a more attractive target for investment managers like Russell, who was looking to gain assets to boost its struggling proprietary funds.[1] When Russell obtained fiduciary control of the Plan's investment menu in late 2015, the Plan's menu of twenty funds (which were managed by a variety of investment managers) was immediately replaced with a menu consisting exclusively of its own proprietary funds, and subsequently over 99% of the Plan's assets were transferred into the Russell funds.[2]

6.      There was no participant-focused justification for this swap. Russell was not a highly regarded fund manager, having ranked dead last out of 48 companies in Barron's long-term (ten-year) fund manager rankings as of year-end 2014.[3] Moreover, many of the funds that were replaced, including the Vanguard target date funds, were managed by established fund managers and had performed better than the Russell funds over both short-term and long-term periods prior to the overhaul while exhibiting similar or lower levels of risk.

7.      While participants suffered, Russell reaped the rewards. By adding over $300 million in new investment from the Plan, Russell was able to prop up its struggling proprietary funds, which were losing other investors amid Russell's performance and reputational

---

[1] The Russell funds are managed by Defendant Russell Investments Trust Company, an affiliate of Russell Investment Management, LLC.

[2] The Federated Capital Preservation Fund remained in the Plan as of year-end 2015, but held less than 1% of Plan assets. The Federated fund was removed in 2016.

[3] The Barron's rankings are indicative of poor investment management across Russell's investment group.

AMENDED COMPLAINT - 3
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

shortcomings. Russell's funds continued to underperform until Russell was eventually removed as the Plan's outsourced investment fiduciary in the middle of 2019. In the meantime, the Plan suffered millions of dollars in lost investment returns as a result of Russell adopting an all-proprietary lineup for Plan participants.

8. As the Plan's outsourced investment fiduciary, with discretionary control over the Plan's investments, Russell had a fiduciary obligation under ERISA to set aside all self-interest and to act prudently and for the exclusive benefit of the Plan's participants. *See Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) ("[P]lan trustees [may] delegate investment authority to a professional advisor *who then becomes a fiduciary with a duty of care and duty of loyalty to the plan*") (emphasis added). Russell's conflicted judgment breached multiple ERISA fiduciary standards, including its duty of loyalty to Plan participants and its duty of prudence.

9. The Royal Caribbean Defendants' acquiescence to Russell also breached their own "exacting" fiduciary obligations to prudently select and monitor an outsourcing provider for the Plan. *See Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir. 1983); *Lowen*, 829 F.2d at 1220 (appointing fiduciary may share "joint and several liability" with outsourced fiduciary based on its own conduct). The Royal Caribbean Defendants shown have given much closer scrutiny to Russell and the Russell funds given the sweeping nature of the menu overhaul, the size of the Plan's investment in the Russell funds, and the conflicts of interest that were at play. Based on the information that was available at the time, a prudent plan sponsor and investment committee would not have given Russell carte blanche to engage in this menu overhaul, and would not have stood idly by for years Plan participants suffered the consequences. Further, a prudent Plan sponsor also would have given more careful scrutiny to the Investment Committee's activities.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

11.     Venue is proper in this district under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the breaches of fiduciary duties giving rise to this action occurred, and where a Defendant (Russell) may be found.

## PARTIES

12.     Plaintiff Ann Johnson resides in Coral Gables, Florida. Plaintiff Johnson is a former participant in the Plan and was invested in Russell funds (including the Russell target date fund corresponding to her age) during the proposed class period. Plaintiff has suffered investment losses as a result of Defendants' fiduciary breaches and unlawful conduct as alleged in this Complaint.

13.     Defendant Russell Investments Trust Company (f/k/a Russell Trust Company) is a non-depository trust company based in Seattle. Pursuant to the Investment Management Agreement between Russell and the Royal Caribbean Defendants,  Russell has exercised control over the selection and monitoring of the fund options available on the Plan's investment menu, is an "investment manager" as defined by 29 U.S.C. § 1002(38), and is a fiduciary of the Plan under that section and 29 U.S.C. § 1002(21)(A)(i).

14.     Defendant Royal Caribbean Cruises Ltd. is a global cruise holding company incorporated in the Republic of Liberia with principal executive offices in Miami, Florida, and is the Plan sponsor within the meaning of 29 U.S.C. § 1002(16)(B). As Plan sponsor, Royal Caribbean has ultimate discretion and control over the management and administration of the Plan, including the appointment and monitoring of Royal Caribbean employees on the Investment Committee. In addition, Royal Caribbean is a party to the Investment Management Agreement. Amendment No. 1 to the Investment Management Agreement is signed by Royal Caribbean and states that the Agreement is "between Royal Caribbean Cruises Ltd. ("Company") for the Royal Caribbean Cruises Ltd. Retirement and 401(k) Plan ("Plan") and Russell Investments Trust Company ("Investment Manager")." *See Exhibit 1*.

15.     Defendant Royal Caribbean Cruises Ltd. Investment Committee has been designated by Royal Caribbean as named fiduciary of the Plan with respect to the control or

management of the assets thereof. In performance of its duties, the Investment Committee exercises discretionary authority or discretionary control with respect to administration of the Plan and management and disposition of Plan assets. Accordingly, the Investment Committee is also a functional fiduciary of the Plan pursuant to 29 U.S.C. § 1002(21)(A). The Investment Committee is also a party to the Investment Management Agreement. The Investment Management Agreement, as drafted, states that it was entered into "by and between the Royal Caribbean Cruises Ltd. Investment Committee, and Russell Trust Company[.]" *Exhibit 1.*

## THE PLAN

16.     The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A) and a "defined contribution" or "individual account" plan within the meaning of 29 U.S.C. § 1002(34). The Plan is also an "ERISA section 404(c) plan," which means that participants may choose between investment options (called "designated investment alternatives") made available by the Plan's fiduciaries. *See* 29 C.F.R. § 2550.404c-1(a)(1) & (e)(4). In such plans, the set of investment options made available by a plan's fiduciaries is called the "investment menu." *E.g.,* DEP'T OF LABOR, *Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 72846, 72863 (Nov. 13, 2020) ("[W]hen assembling, choosing, or modifying an *investment menu* for participants' investment choices …") (emphasis added).

17.     As a defined contribution plan, the Plan provides retirement benefits to participants that are "limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *See Tibble v. Edison Intern.*, 575 U.S. 523, 525 (2015). Thus, the investment options made available by the Plan's fiduciaries are critical to participants' retirement outcomes.[4]

---

[4] Defined contribution plans are distinct from "defined benefit" plans, as defined benefit plan participants receive fixed payouts that cannot be reduced based on the market performance of the underlying assets of their plan. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("Such a plan, as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment. … [T]he employer typically bears the entire investment risk and … must cover any underfunding as the result of a shortfall that may occur from the plan's investments.") (quotation marks and citations omitted); *see also Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1616

AMENDED COMPLAINT - 6
CASE NO. 2:21-CV-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

18.     The Plan was previously known as the Royal Caribbean Cruises Ltd. 401(k) Plan. In 2015, the Royal Caribbean Cruises Ltd. Et Al Retirement Plan merged with and became part of the Royal Caribbean Cruises Ltd. 401(k) Plan, which was renamed the Royal Caribbean Cruises Ltd. Retirement Savings Plan. As of the end of 2019, the Plan had more than 7,000 participants and roughly $500 million in assets.

19.     In September 2015, the Investment Committee hired Russell as its fiduciary outsourcing partner under the procedures established by ERISA § 3(38). Royal Caribbean participated in this appointment, as acknowledged by Amendment No. 1 to the Investment Management Agreement. Russell then assumed control of the Plan's investment menu on or about September 30, 2015, subject to monitoring and oversight by the Royal Caribbean Defendants.

20.     In their respective roles, Russell, Royal Caribbean, and the Investment Committee are all fiduciaries of the Plan, *see supra* at ¶¶ 13-15, and are considered co-fiduciaries for purposes of 29 U.S.C. § 1105.

## BACKGROUND

### ERISA FIDUCIARY DUTIES

21.     ERISA recognizes "that the continued well-being and security of millions of employees and their dependents are directly affected by [retirement] plans." 29 U.S.C. § 1001(a). "The principal object of the statute is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (citation omitted). The "crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators" and "ERISA was designed to prevent these abuses." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985) (citing extensive legislative history).

---

(2020) ("[P]articipants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to participants in a defined-contribution plan, and they possess no equitable or property interest in the plan[.]").

AMENDED COMPLAINT - 7
CASE NO. 2:21-CV-00743-RSM

22. To protect plan participants, ERISA incorporates the twin fiduciary duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1). These fiduciary duties are the "highest known to law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (citation omitted).

23. The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), with an "eye single" to the interests of such participants and beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). "A fiduciary may not subordinate the interests of the participants and beneficiaries in their retirement income or financial benefits under the plan to other objectives, and may not sacrifice investment return or take on additional investment risk to promote non-pecuniary benefits or goals." 29 C.F.R. 2550.404a-1(c)(1); *see also* DEP'T OF LABOR, ERISA Adv. Op. 88-16A, 1988 WL 222716, at *3 (Dec. 19, 1988) ("A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.").

24. The duty of prudence requires fiduciaries to exercise the "care, skill, prudence, and diligence" that a prudent person would utilize in managing a similar plan. 29 U.S.C. § 1104(a)(1)(B). To satisfy the duty of prudence with respect to an investment, a fiduciary must "employ[] appropriate methods to investigate the merits of the investment", *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983), including considering the "the risk of loss and opportunity for gain … associated with the investment … compared to the opportunity for gain … associated with reasonably available alternatives with similar risks". 29 C.F.R. § 2550.404a-1(a)(2)(i). Where a potential conflict of interest exists, fiduciaries must engage in an "intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Howard*, 100 F.3d at 1488–89.

25. These fiduciary duties apply to both the selection and the ongoing monitoring and retention of investment options in a defined contribution plan's menu. *See* 29 C.F.R. 2550.404c-1(d)(2)(iv) (providing that, while participants choose between investment options, plan fiduciaries

have a "duty to prudently select and monitor any … designated investment alternative offered under the plan"); 29 C.F.R. § 404a-1(d)(1) (confirming that ERISA fiduciary duties "apply to a fiduciary's selection or retention of designated investment alternatives available to participants and beneficiaries in an individual account plan"); *see also Tibble*, 575 U.S. at 529. ("[A] trustee has a continuing duty to monitor trust investments and remove imprudent ones … [that] exists separate and apart from the trustee's duty to exercise prudence in selecting investments[.]").

## DEFENDANTS' MISMANAGEMENT OF THE PLAN

### *IMPRUDENT AND DISLOYAL SELECTION AND RETENTION OF RUSSELL FUNDS*

26.     Immediately after Russell assumed the role of outsourced investment fiduciary, the entire Plan menu was replaced and over 99% of the Plan's assets were transferred into Russell's own struggling proprietary funds. The Royal Caribbean Defendants actively participated in this decision, as the Investment Management Agreement entered between the Royal Caribbean Defendants and Russell authorized Russell to use only Russell funds in the Plan.

27.     As a result, in selecting the Russell funds for the Plan, both the Royal Caribbean Defendants and Russell are in breach of their fiduciary duties. *See* 29 C.F.R. 2550.404c-1(d)(2)(iv); 29 C.F.R. § 404a-1(d)(1); *Lowen*, 829 F.2d 1209 at 1219 (finding where a discretionary investment manager is ordered by a plan's named fiduciary to make particular investments, the discretionary investment manager is "under an obligation to the Plan[] to make a professional and independent judgment as to the wisdom of the proposed investments. If [the discretionary investment manager] viewed the investments negatively, it should have so informed the [named fiduciary] and declined to carry out their instructions, particularly in light of the potential profit for those who controlled [the discretionary investment manager]").

### The Russell Target Date Funds

28.     Before Russell assumed control of the Plan's investment menu, the Plan contained twenty different investments managed by a variety of asset managers. Among those investments was a suite of industry-leading "target date" funds managed by Vanguard.

AMENDED COMPLAINT - 9
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

29.    It was especially inappropriate to replace the Vanguard target date funds in the Plan with Russell's own line of proprietary target date funds. There was no reason for a prudent and loyal fiduciary to remove the Vanguard target date funds at all, let alone replace them with the Russell target date funds. The illustration below compares the performance of Vanguard's target date funds to Russell's target date funds leading up to year-end 2014 (the year before Russell assumed fiduciary control of the Plan's menu), by identifying (1) the fund that outperformed over each period, (2) the excess average annual return achieved by the outperforming fund, (3) the fund that exhibited lower risk (as measured by the standard deviation of monthly returns during the period), and (4) the difference between standard deviations of the lower risk fund and the higher risk fund.

**Illustration 1: Prior TDFs vs. Russell TDFs**
*As of Year-End 2014*

| 2055 Fund | 3-Year | 5-Year[5] | Life of Russell Fund[6] |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.07%) | -- | Vanguard (+ 2.14%) |
| Lower Risk Fund | Vanguard (– .25%) | -- | Vanguard (– .25%) |

| 2050 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.04%) | Vanguard (+ 1.40%) | Vanguard (+ 1.38%) |
| Lower Risk Fund | Vanguard (– 0.21%) | Vanguard (– 0.53%) | Vanguard (– 1.08%) |

| 2045 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.09%) | Vanguard (+ 1.42%) | Vanguard (+ 1.53%) |
| Lower Risk Fund | Vanguard (– .15%) | Vanguard (– 0.49%) | Vanguard (– 1.09%) |

| 2040 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.03%) | Vanguard (+ 1.37%) | Vanguard (+ 1.11%) |
| Lower Risk Fund | Vanguard (– 0.20%) | Vanguard (– 0.52%) | Vanguard (– 1.16%) |

| 2035 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 1.41%) | Vanguard (+ 1.08%) | Vanguard (+ 1.20%) |
| Lower Risk Fund | Vanguard (– 0.63%) | Vanguard (– 0.77%) | Vanguard (– 1.25%) |

[5] The Russell 2055 Fund did not have five years of performance history as of year-end 2014.

[6] The Russell target date funds did not have ten years of performance history as of year-end 2014. This column represents the risk or return as measured from the date of the first full month that the Russell funds were in operation through year-end 2014.

AMENDED COMPLAINT - 10
CASE NO. 2:21-CV-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

| *2030 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.09%) | Vanguard (+ 1.39%) | Vanguard (+ 1.35%) |
| Lower Risk Fund | Russell (– 0.03%) | Vanguard (– .81%) | Vanguard (– 1.75%) |

| *2025 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 2.67%) | Vanguard (+ 1.44%) | Vanguard (+ 1.27%) |
| Lower Risk Fund | Russell (– .82%) | Russell (– 0.75%) | Vanguard (– 0.16%) |

| *2020 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| Higher Return Fund | Vanguard (+ 3.26%) | Vanguard (+ 1.60%) | Vanguard (+ 0.79%) |
| Lower Risk Fund | Russell (– 1.12%) | Russell (– 1.55%) | Russell (– 0.80%) |

30.     Despite taking on less risk than the Russell funds the majority of the time, the Vanguard funds outperformed the Russell funds over 3-years, 5-years, and since the Russell fund's inception *for every vintage offered,* by at least *79 basis points*. Faced with these results, a prudent and objective fiduciary would not have replaced the Vanguard target date funds with Russell's target date funds in 2015. Nor would a prudent and objective fiduciary have chosen Russell's target date funds over parallel Vanguard funds if considering new investments for the Plan.

31.     Vanguard's target date funds were not the only choice a prudent fiduciary could have made. When Russell was removed as the Plan's investment manager in 2019, the Russell target date funds were replaced with another suite of target date funds managed by an industry leader, American Funds. Whether the Russell target date funds are compared to the target date funds in the Plan before Russell took control of the Plan's menu (Vanguard), the target date funds that replaced the Russell funds after Russell was removed as the Plan's investment manager (American Funds), or to a standard industry target date fund benchmark created by Standard & Poor's,[7] a prudent and objective fiduciary would not have selected the Russell target date funds for the Plan.

---

[7] The S&P Target Date Index represents a market consensus of asset class exposure and glide path across the universe of target date fund managers. The index is designed to help retirement plan fiduciaries screen, select, and monitor appropriate target date funds.

AMENDED COMPLAINT - 11
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

*Illustration 2: Prior TDFs, Current TDFs, and TDF Indices vs. Russell TDFs*
*As of Year-End 2014*

| 2055 Fund | 3-Year | 5-Year | Life of Russell Fund[8] |
|---|---|---|---|
| American Funds | 16.51% | -- | 15.28% |
| Vanguard | 15.49% | -- | 14.24% |
| S&P Target Date Index | 15.20% | -- | 13.99% |
| Russell | 13.42% | -- | 12.10% |

| 2050 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.52% | 11.82% | 7.08% |
| Vanguard | 15.49% | 11.58% | 6.85% |
| S&P Target Date Index | 14.86% | 11.21% | 6.25% |
| Russell | 13.45% | 10.18% | 5.47% |

| 2045 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.53% | 11.80% | 7.09% |
| Vanguard | 15.49% | 11.58% | 6.84% |
| S&P Target Date Index | 14.43% | 11.04% | 6.12% |
| Russell | 13.40% | 10.16% | 5.31% |

| 2040 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.50% | 11.79% | 6.63% |
| Vanguard | 15.48% | 11.57% | 5.78% |
| S&P Target Date Index | 13.96% | 10.81% | 5.12% |
| Russell | 13.45% | 10.20% | 4.67% |

| 2035 Fund | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.29% | 11.71% | 6.69% |
| Vanguard | 14.90% | 11.29% | 6.21% |
| S&P Target Date Index | 13.38% | 10.50% | 5.72% |
| Russell | 13.49% | 10.21% | 5.01% |

[8] The Russell Funds did not have ten years of performance history as of year-end 2014. This column represents the return as measured from the date of the first full month that the Russell funds were in operation through year-end 2014.

AMENDED COMPLAINT - 12
CASE NO. 2:21-CV-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

| *2030 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 16.15% | 11.72% | 6.55% |
| Vanguard | 13.84% | 10.76% | 5.45% |
| S&P Target Date Index | 12.60% | 10.07% | 5.07% |
| Russell | 11.75% | 9.37% | 4.10% |

| *2025 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 15.12% | 11.23% | 6.29% |
| Vanguard | 12.78% | 10.22% | 5.97% |
| S&P Target Date Index | 11.60% | 9.55% | 5.59% |
| Russell | 10.11% | 8.78% | 4.70% |

| *2020 Fund* | 3-Year | 5-Year | Life of Russell Fund |
|---|---|---|---|
| American Funds | 12.70% | 10.00% | 5.56% |
| Vanguard | 11.71% | 9.67% | 5.51% |
| S&P Target Date Index | 10.57% | 8.95% | 4.99% |
| Russell | 8.45% | 8.07% | 4.71% |

32.    Russell yielded these deficient results—often underperforming Vanguard and American Funds by 2-3% per year and the S&P target date indices by about 1% per year—while taking on comparable and often higher levels of risk. Indeed, over each period, Russell's 2035, 2040, 2045, 2050, and 2055 funds exhibited higher risk (as measured by the standard deviation of returns) than the corresponding vintages from Vanguard and American Funds.

33.    The Russell funds' underperformance prior to their introduction to the Plan was a sign of things to come. In the years following, the Russell target date funds continued to underperform Vanguard, American Funds, and their benchmark indices while often incurring greater risk doing so.

AMENDED COMPLAINT - 13
CASE NO. 2:21-CV-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

*Illustration 3: Prior TDFs, Current TDFs, and TDF Indices vs. Russell TDFs*
*3-Year Performance Throughout Statutory Period*

| 2055 Fund | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | 3-Year Return | 3-Year Alpha[9] | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha |
| American Funds | 10.88% | 1.80 | 5.26% | 0.58 | 10.15% | 0.83 | 7.81% | 1.14 |
| Vanguard | 9.41% | 0.24 | 4.68% | -0.13 | 9.11% | -0.40 | 6.77% | 0.01 |
| S&P Target Date Index | 9.50% | n/a | 4.92% | n/a | 9.62% | n/a | 6.82% | n/a |
| Russell | 7.01% | -1.87 | 3.70% | -1.11 | 8.32% | -1.21 | 5.79% | -0.70 |

| 2050 Fund | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha |
| American Funds | 10.91% | 1.80 | 5.28% | 0.52 | 10.16% | 0.78 | 7.83% | 1.23 |
| Vanguard | 9.47% | 0.26 | 4.72% | -0.18 | 9.16% | -0.43 | 6.77% | 0.06 |
| S&P Target Date Index | 9.30% | n/a | 4.90% | n/a | 9.49% | n/a | 6.68% | n/a |
| Russell | 7.08% | -1.84 | 3.75% | -1.13 | 8.36% | -1.22 | 5.76% | -0.65 |

| 2045 Fund | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha |
| American Funds | 10.89% | 1.80 | 5.28% | 0.44 | 10.09% | 0.65 | 7.77% | 1.23 |
| Vanguard | 9.47% | 0.20 | 4.72% | -0.29 | 9.17% | -0.53 | 6.78% | 0.08 |
| S&P Target Date Index | 9.00% | n/a | 4.83% | n/a | 9.24% | n/a | 6.51% | n/a |
| Russell | 7.04% | -1.90 | 3.77% | -1.21 | 8.38% | -1.30 | 5.81% | -0.60 |

| 2040 Fund | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha |
| American Funds | 10.87% | 1.75 | 5.19% | 0.28 | 9.89% | 0.54 | 7.62% | 1.18 |
| Vanguard | 9.46% | 0.15 | 4.66% | -0.43 | 8.91% | -0.75 | 6.75% | 0.25 |
| S&P Target Date Index | 8.73% | n/a | 4.76% | n/a | 8.95% | n/a | 6.33% | n/a |
| Russell | 7.08% | -1.96 | 3.76% | -1.37 | 8.37% | -1.42 | 5.86% | -0.51 |

| 2035 Fund | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | 3-Year | 3-Year | 3-Year | 3-Year | 3-Year | 3-Year | 3-Year | 3-Year |

---

[9] Alpha is a metric used to measure a manager's skill on a risk-adjusted basis.

AMENDED COMPLAINT - 14
CASE NO. 2:21-cv-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

| | Return | Alpha | Return | Alpha | Return | Alpha | Return | Alpha |
|---|---|---|---|---|---|---|---|---|
| American Funds | 10.69% | 1.69 | 5.15% | 0.23 | 9.56% | 0.44 | 7.43% | 1.15 |
| Vanguard | 9.16% | 0.36 | 4.66% | -0.22 | 8.39% | -0.54 | 6.41% | 0.29 |
| S&P Target Date Index | 8.37% | n/a | 4.66% | n/a | 8.51% | n/a | 6.08% | n/a |
| Russell | 7.24% | -1.44 | 3.75% | -1.06 | 7.38% | -1.21 | 5.39% | -0.12 |

| *2030 Fund* | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** |
| American Funds | 10.56% | 1.84 | 5.03% | 0.24 | 8.61% | 0.20 | 6.92% | 1.12 |
| Vanguard | 8.52% | 0.44 | 4.58% | -0.04 | 7.85% | -0.27 | 6.07% | 0.24 |
| S&P Target Date Index | 7.86% | n/a | 4.50% | n/a | 7.87% | n/a | 5.77% | n/a |
| Russell | 6.20% | -1.03 | 3.76% | -0.39 | 6.52% | -0.63 | 4.86% | -0.02 |

| *2025 Fund* | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** |
| American Funds | 9.75% | 1.93 | 4.67% | 0.35 | 7.43% | 0.38 | 6.12% | 0.90 |
| Vanguard | 7.88% | 0.51 | 4.53% | 0.11 | 7.31% | -0.08 | 5.73% | 0.16 |
| S&P Target Date Index | 7.21% | n/a | 4.32% | n/a | 7.20% | n/a | 5.46% | n/a |
| Russell | 5.24% | -0.67 | 3.79% | 0.21 | 5.64% | -0.23 | 4.27% | -0.09 |

| *2020 Fund* | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** | **3-Year Return** | **3-Year Alpha** |
| American Funds | 8.28% | 1.47 | 4.61% | 0.52 | 6.58% | 0.37 | 5.55% | 0.84 |
| Vanguard | 7.21% | 0.52 | 4.39% | 0.11 | 6.61% | -0.04 | 5.32% | 0.16 |
| S&P Target Date Index | 6.57% | n/a | 4.18% | n/a | 6.48% | n/a | 5.05% | n/a |
| Russell | 4.24% | -0.80 | 3.65% | 0.41 | 4.90% | -0.01 | 3.81% | -0.04 |

34.    The Russell target date funds' persistent underperformance is due, in part, to the fact that the Russell target date funds are comprised of other underperforming Russell funds. A prudent and objective fiduciary would have been aware of this and would have taken account of Russell's overall investment management shortcomings.  For this reason as well, a prudent and objective fiduciary would not have continued to retain a target date series consisting solely of other Russell funds.

35.    For example, a portion of each target date fund is invested in the Russell Small Cap

fund, which has consistently struggled to keep pace with its benchmark and market comparators. In the rare occurrences where the fund was able to achieve returns comparable to its benchmark and market comparators, it did so only by taking on greater amounts of risk.

| Fund | 2015 | | 2016 | | 2017 | | 2018 | |
|---|---|---|---|---|---|---|---|---|
| | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha | 3-Year Return | 3-Year Alpha |
| JPMorgan Small Cap Equity R6 | 12.55% | 2.59 | 8.67% | 3.05 | 11.60% | 3.53 | 8.91% | 2.38 |
| T. Rowe Price Small-Cap Stock | 12.52% | 1.74 | 7.06% | 0.87 | 9.79% | 0.93 | 9.76% | 2.97 |
| Russell 2000 TR USD | 11.65% | n/a | 6.74% | n/a | 9.96% | n/a | 7.36% | n/a |
| Russell Small Cap Fund | 12.87% | 1.43 | 5.86% | -0.54 | 9.28% | -0.32 | 7.05% | -0.06 |

36.      Imprudent underlying holdings of the Russell target date funds are not limited to the Russell Small Cap fund. Other holdings include the speculative Russell Emerging Markets fund, which has consistently trailed readily available market comparators. For example, in 2014, the year immediately prior to the Russell funds' introduction to the Plan, the Russell Emerging Markets fund trailed the T. Rowe Price Emerging Markets Stock and JPMorgan Emerging Markets Equity R6 funds by 2.12% and 1.15%, respectively, and also had a trailing alpha. Moreover, the Emerging Markets fund's underperformance persisted. In the three-year period ending 2017, the first three-year period after 2014's worrying returns, the Emerging Markets fund again trailed the T. Rowe Price Emerging Markets Stock and JPMorgan Emerging Markets Equity R6 funds by 2.39% and 1.05% *per year*, respectively, and again had a trailing alpha..[10]

37.      Yet another example of an imprudent underlying target date fund holding is the

---

[10] The Russell Emerging Markets fund continued to struggle during the three-year period ending 2018, the last year before the Russell funds' removal in 2019. During this time, the fund trailed the T. Rowe Price Emerging Markets Stock and JPMorgan Emerging Markets Equity R6 funds by 0.77% and 1.45% *per year*, respectively, while again achieving a lower alpha.

AMENDED COMPLAINT - 16
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

Russell Commodities fund. The Commodities fund displayed clear warning signs in 2014, the year immediately prior to the Russell funds' addition to the Plan. During 2014, the Commodities fund trailed the BlackRock Commodity Strategies and DWS Enhanced Commodity Strategy funds by 3.06% and 11.1%, respectively, while achieving an alpha of -0.45 in comparison to BlackRock's 0.97 and DWS's 4.76. In a theme common to the Russell funds, the Commodities fund's struggles persisted throughout the statutory period, trailing the BlackRock Commodity Strategies fund by 4.2% and the DWS Enhanced Commodity Strategy fund by 1.98% *per year* over the three-year period ending 2017.[11]

38.    Because the Russell target date funds' holdings are limited exclusively to other Russell funds, their performance is inseparably tied to the deficiencies of Russell's investment management as a whole. As a result, the specific allocation assigned to each underlying Russell fund within the target date series is not the primary reason for its underperformance, but it is instead the byproduct of a target date series unable to invest in superior, non-proprietary investments.

39.    For all of the foregoing reasons (among others), a prudent and loyal fiduciary would not have selected the Russell target date funds for addition to the Plan, and would not have allowed them to remain in the Plan for years as losses continued to mount.

### The Russell Asset Class Funds

40.    Imprudent fund selection and retention was not limited to the target date funds and also included the Plan's single-asset class funds. For example, the underperforming Russell Small Cap fund, discussed above, was also included in the Plan as a standalone investment option, and served as the only small cap equity investment available to participants.

41.    Furthermore, upon the introduction of Russell funds to the Plan, both the Russell International fund and Russell All International Markets fund were added. By 2016, the International fund was removed from the Plan, leaving the All International Markets fund as the

---

[11] In addition to trailing market comparators, the Commodities fund incurred more risk while doing so and tallied a lower alpha.

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

Plan's only international equity investment. However, a prudent and objective review of the two funds would have resulted in retaining the International fund and removing the All International Markets fund.

42.     For example, in the year leading up to the International fund's removal, it outperformed the All International Markets fund by 0.93% while achieving an alpha of 1.16 in comparison to All International Market's -0.06. The International fund's superiority was reflected both in the investment decisions of Plan participants as well as the overall marketplace. As of year-end 2015 and just before its removal, the International fund held nearly $35 million in Plan assets, making it the Plan's third largest holding, in comparison to All International Markets fund's approximately $1.4 million. At this same time, the overall assets of the International fund numbered approximately $3.1 billion while the All International Markets fund's assets totaled just $558 million.

43.     Despite this clear preference by both Plan participants and the marketplace for the International fund and its outperformance versus the All International Markets fund, the International fund was removed, and participants suffered accordingly. In the following three years, the All International Markets fund underperformed the removed International fund by 3.55% *per year* while achieving an alpha of -1.09 in comparison to the International fund's 5.73.

44.     The continued retention of underperforming, overly risky, and disfavored Russell funds further illustrate Defendants' failure to prudently and objectively review the performance of the Plan's investments throughout the statutory period.

### RUSSELL LOOKED TO MAINTAIN ITS ASSET BASE WHILE OTHER FIDUCIARIES FLED

45.     Russell's selection and retention of its own struggling proprietary funds for the Plan coincided with efforts to maintain an otherwise declining asset base.[12]

46.     Prior to and during its time as the Plan's outsourced investment fiduciary, Russell's

---

[12] This desire to prop up Russell's asset base with Plan assets is further reflected in the decision to remove the $3.1 billion International fund from the Plan and redirect those Plan assets to the vastly smaller All International Markets fund.

AMENDED COMPLAINT - 18
CASE NO. 2:21-CV-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

business was threatened by diminishing assets in the Russell funds. Maintaining asset levels is critical for fund managers. Managers charge fees and expenses as a percentage of the assets in the fund, so a fund's size determines the expense ratio that the manager can offer in the marketplace. A decline in assets means that a fund must charge higher fees or reduce services to maintain the same level of profitability for the manager, or alternatively, the fund manager must subsidize the fund and accept a lower level of profits. Further, a competitive marketplace for fees leaves little room for managers to raise fees.[13] A material drop in assets therefore poses significant risks to the survival of a fund.

47.    Scale is especially critical for Russell's target date funds. As discussed, Russell's target date funds are composed of a dozen underlying Russell funds. Therefore, a drop in assets in the Russell target date funds also reduces assets in a dozen other Russell funds.

48.    Russell's funds were at risk during its tenure as the Plan's investment fiduciary, as fiduciaries of other large retirement plans withdrew their investments from the funds. After hitting a high mark in terms of assets around 2013, Russell started to lose investors in its target date funds, and assets in the funds started to decline. In 2014, Russell lost more than 30% of the assets in its target date funds when the funds' largest investor (which had more than $500 million in the funds) switched to Vanguard's target date funds.[14]

49.    Other large investors left Russell's target date funds in subsequent years, including Russell's own employee plan, which withdrew its entire investment (around $130 million) from the funds in 2016. During 2017, four additional fiduciaries, representing twelve plans and over $450 million invested the funds, pulled their investments. The 2017 exodus included nearly half

---

[13] *See* CALLAN INSTITUTE, 2019 Investment Management Fee Study ("[S]ustained downward pressure on both fee schedules and mandate sizes results in significantly lower dollar fees paid (manager revenue) per client."), *available at* https://www.callan.com/uploads/2020/05/0ce3d1da04c2c1d8e13a30a67dbdfabe/callan-2019-im-fee-study.pdf (last visited June 2, 2021).

[14] This marketplace flight from Russell funds, and Russell's self-interest in maintaining asset levels in these funds, should have served as a further warning to the Royal Caribbean Defendants and caused them to scrutinize Russell and the Russell funds more closely.

the target date funds' remaining investors and more than one-third of the reported assets as of year-end 2016. Five additional plans left the funds in 2018.

50. During Russell's tenure, the Plan represented around 15%-20% of the assets in Russell's target date funds. This gave Russell's target date funds a critical boost during a period of large investor outflows, and improperly entered into Russell's decision to select and retain the Russell target date funds for the Plan.

51. As discussed, the target date funds were not the only problematic funds in the Plan. No prudent and loyal fiduciary would have made an across-the-board decision to select an all-Russell lineup in late 2015, considering Russell's poor reputation and poor results as an investment manager. Additionally, had Russell been prudently monitoring the funds after they were added to the Plan, it would have followed the lead of the numerous other fiduciaries that removed underperforming Russell funds from their plans. Although Russell was ultimately removed as the Plan's outsourced investment fiduciary in mid-2019, Russell's self-serving fund retention had already cost participants millions of dollars in retirement savings. Upon Russell's removal as the Plan's investment fiduciary, the Russell funds were replaced[15] with a variety of funds managed by other companies, including Vanguard and American Funds.

### THE ROYAL CARIBBEAN DEFENDANTS FAILED TO PRUDENTLY SELECT AND MONITOR RUSSELL

52. Although Russell had primary responsibility for the menu overhaul as the Plan's outsourced investment manager, the Royal Caribbean Defendants had a fiduciary duty to prudently select Russell for that role, monitor its performance and the establishment and implementation of the new investment lineup, and determine whether continuing the delegation and the new investment lineup was in the best interest of participants. *See* 29 U.S.C. § 1105(c)(2), (d)(2).

53. Based on Russell's poor reputation as an investment manager and the poor

---

[15] Only the Russell Investment Contract Fund remained in the Plan as of year-end 2019. The Plan's form 5500s specify that Russell, as trustee, requires one-year advance notification for full redemption of a stable value fund like the Russell Investment Contract Fund.

AMENDED COMPLAINT - 20
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

performance of the Russell funds, a prudent plan fiduciary would not have selected Russell as the Plan's delegated investment manager.

54.    Further, based on Russell's conflict of interest in selecting and retaining its own funds, the inferior track record of Russell's funds relative to the Plan's existing menu, the ongoing underperformance of the Russell funds, and the Royal Caribbean Defendants' lack of swift subsequent intervention, it does not appear that the Royal Caribbean Defendants prudently monitored Russell or reviewed Russell's actions with respect to the Plan menu after Russell was appointed.

55.    As losses mounted following Russell's appointment as the Plan's investment manager, and as they continued to mount, the Royal Caribbean Defendants should have removed Russell prior to 2019 and should have replaced the Russell funds with superior alternative investments from other more successful fund managers.

56.    In all of these respects, Royal Caribbean and the Investment Committee failed to live up to their fiduciary obligations.

57.    Additionally, Royal Caribbean, as the party responsible for appointing and overseeing members of the Investment Committee, should have more closely monitored the Investment Committee and taken measures to ensure that the Investment Committee met its own fiduciary obligations (including the Investment Committee's obligations with respect to the appointment, monitoring, and removal of Russell as the Plan's investment manager).

**PLAINTIFF LACKED KNOWLEDGE OF DEFENDANTS' FIDUCIARY MISCONDUCT**

58.    Plaintiff did not have knowledge of all material facts (including, among other things, the poor performance of the Russell funds before they were added to the Plan; the performance of the Russell funds compared to the funds in the Plan before Russell's appointment as investment manager; the performance of the Russell funds compared to other marketplace options available to the Plan; the risk assumed by Russell funds compared to other options available to the Plan; Russell's poor reputation as a fund manager; the importance of maintaining

AMENDED COMPLAINT - 21
CASE NO. 2:21-cv-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

fund assets to Russell's business strategy; the migration of other fiduciaries from the Russell funds; Russell's conflicted role in selecting and retaining its own funds for the Plan as a supposedly "independent" investment manager; the relative unpopularity of the Russell funds in the retirement plan marketplace and the investment marketplace overall; the Investment Management Agreement between the Royal Caribbean Defendants and Russell; and the Royal Caribbean Defendants' roles with respect to the matters at issue) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed. Further, Plaintiff did not have actual knowledge of the specifics of Defendants' processes for managing the Plan and the Plan's investments, because this information is solely within the possession of Defendants prior to discovery. For purposes of this Amended Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## CLASS ACTION ALLEGATIONS

59.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to seek the remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks certification of this action as a class action pursuant to these statutory provisions and Fed. R. Civ. P. 23.

60.    Plaintiff asserts her claims against herein on behalf of a class of participants and beneficiaries of the Plan defined as follows:[16]

> All participants and beneficiaries of the Royal Caribbean Cruises,
> Ltd. Retirement Savings Plan at any time from October 1, 2015 to
> the date Russell was removed as the Plan's investment manager.

61.    Numerosity: The Class is so numerous that joinder of all Class members is impracticable. During the putative class period, the Plan had roughly 7,000 participants.

62.    Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff participated in the Plan, was invested in Russell funds (including the

---

[16] Plaintiff reserves the right to propose other or additional classes or subclasses in her motion for class certification or subsequent pleadings in this action.

AMENDED COMPLAINT - 22
CASE NO. 2:21-cv-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

Russell target date funds), and has suffered injuries as a result of the fiduciary breaches alleged herein. Defendants treated Plaintiff consistent with other Class members with regard to the Plan and Defendants managed the Plan as a single entity. Defendants' fiduciary breaches affected all Class members similarly.

63.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that she seeks to represent, and she has retained counsel experienced in complex class action litigation, including ERISA class action litigation. Plaintiff does not have any conflict of interest with any Class members that would impair or impede her ability to represent other Class members.

64.    Commonality: Common questions of law and fact exist as to all Class members, and predominate over any questions solely affecting individual Class members, including but not limited to:

    a)    Whether Defendants are fiduciaries of the Plan, and the scope of their fiduciary duties;

    b)    Whether Defendants breached their fiduciary duties under 29 U.S.C. § 1104 by engaging in the conduct described herein;

    c)    The proper form of equitable and injunctive relief; and

    d)    The proper measure of monetary relief.

65.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Russell would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

66.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

67.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' fiduciary conduct and decisions as described in this Amended Complaint applied uniformly to all Class members. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## COUNT I
**Breach of Duties of Loyalty and Prudence Against Defendant Russell**

68.    Plaintiff repeats and re-alleges Paragraphs 1 through 67 of the Complaint as though fully set forth herein.

69.    Defendant Russell was a fiduciary of the Plan during the proposed class period under 29 U.S.C. § 1002(21) and 29 U.S.C. § 1002(38).

70.    ERISA imposed strict fiduciary duties of loyalty and prudence upon Russell in its selection and monitoring of Plan investments. Section 404(a) of ERISA, 29 U.S.C. § 1104(a), provides:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A)    for the exclusive purpose of

(i)    providing benefits to participants and their beneficiaries; and

AMENDED COMPLAINT - 24
CASE No. 2:21-cv-00743-RSM

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

(ii)    defraying reasonable expenses of administering the plan; [and]

(B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

71.    These fiduciary duties are continuing in nature, and apply to both the selection of investments for the Plan and the subsequent monitoring, retention, removal, and replacement of those investment options. *Tibble*, 575 U.S. at 529.

72.    Russell breached its fiduciary duties by selecting the Russell funds for the Plan, transferring over $300 million in assets into the Russell funds, and retaining the funds throughout its tenure as the Plan's outsourced investment fiduciary. This was neither prudent nor in the interest of Plan participants and beneficiaries.

73.    A prudent fiduciary acting solely in the interest of Plan participants and beneficiaries would not have selected the Russell funds or mapped Plan assets into those funds. Moreover, a prudent and loyal fiduciary would not have retained Russell's inferior proprietary funds in the Plan's investment lineup.

74.    Russell's fiduciary breaches resulted in significant losses to the Plan, and Russell is liable for these losses under 29 U.S.C. §§ 1109(a) and 1132(a)(2).

75.    In addition, Russell is liable for other appropriate relief, as provided by 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (3), and reasonable attorneys' fees and expenses as provided by 29 U.S.C. § 1132(g).

## COUNT II

### Breach of the Duty of Prudence, including Failure to Monitor Appointed Fiduciaries, Against Royal Caribbean Defendants

76.    Plaintiff repeats and re-alleges Paragraphs 1 through 75 of the Amended Complaint as though fully set forth herein.

77.    Defendant Royal Caribbean is and was the Plan sponsor under 29 U.S.C. § 1002(16)(B) and a fiduciary of the Plan under 29 U.S.C. § 1002(21). Defendant Investment Committee is and was a named fiduciary of the Plan and also a functional fiduciary under 29 U.S.C. § 1002(21).

78.    As fiduciaries to the Plan, the Royal Caribbean Defendants are responsible for discharging their fiduciary functions in accordance with ERISA's strict fiduciary standards, and must exercise appropriate "care skill, prudence, and diligence" in carrying out their duties. *See* 29 U.S.C. § 1104.  In addition, the Royal Caribbean Defendants are responsible for monitoring any appointees to whom fiduciary functions are delegated, to ensure that their appointees are in compliance with ERISA's fiduciary standards. *See* 29 C.F.R. § 2509.75-8, at FR-17 ("At reasonable intervals the performance of other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards[.]"); 29 C.F.R. 2550.404c-1(d)(2)(iv) (providing that plan fiduciaries have a "duty to prudently select and monitor service providers").[17]

79.    The Royal Caribbean Defendants breached their fiduciary duties by, among other things:

---

[17] The Uniform Prudent Investor Act, often cited by courts to construe ERISA fiduciary duties, *see, e.g., Tibble*, 575 U.S. at 529, further provides that a fiduciary who delegates investment management functions "shall exercise reasonable care, skill, and caution in: (1) selecting an agent; (2) establishing the scope and terms of the delegation, consistent with the purposes and terms of the trust; and (3) periodically reviewing the agent's actions in order to monitor the agent's performance and compliance with the terms of the delegation." UPIA § 9(a), *available at* https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=22cb68ce-097b-178f-899d-320e70be214d (last visited May 18, 2021).

AMENDED COMPLAINT - 26
CASE NO. 2:21-CV-00743-RSM

**NICHOLS KASTER PLLP**
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

a) Imprudently selecting Russell as the Plan's outsourced investment manager;

b) Failing to prudently survey Russell's investment plan and the Russell funds prior to outsourcing fiduciary investment duties to Russell and adopting Russell's self-serving Plan menu;

c) Failing to prudently monitor and review Russell's actions as the Plan's investment manager;

d) Failing to prudently review the establishment and implementation of Russell's new Plan menu;

e) Failing to appropriately monitor and review the ongoing performance of the Russell funds;

f) Failing to appropriately consider Russell's conflicts of interest; and

g) Failing to swiftly remove Russell and replace the Russell funds despite Russell's ongoing self-serving and imprudent management of the Plan.

80. Royal Caribbean also breached its fiduciary duties by, among other things:

a) Failing to appropriately monitor and evaluate the Investment Committee or have a system in place for doing so; and

b) Acknowledging and approving the Investment Committee's selection of Russell as the Plan's outsourced investment manager;

c) Failing to take action when the Investment Committee continued to retain Russell despite Russell's ongoing self-serving and imprudent management of the Plan's investments.

81. As a consequence of the foregoing breaches of fiduciary duties, the Plan suffered significant losses.

82. The Royal Caribbean Defendants are liable for those losses and other appropriate relief as provided by 29 U.S.C. §§ 1109(a) and 1132(a)(2).

83.     The Royal Caribbean Defendants are also liable to the Plan as co-fiduciaries under 29 U.S.C. § 1105. Based on the circumstances of Russell's engagement, the overhaul of the Plan's investment menu with poorly performing Russell funds, and Russell's subsequent retention of those funds, the Royal Caribbean Defendants enabled Russell's imprudent and self-serving conduct by failing in their own duties to prudently select and/or monitor fiduciaries on behalf of the Plan. The Royal Caribbean Defendants had knowledge of Russell's self-serving and imprudent conduct, and failed to take reasonable steps to remedy Russell's breaches. Royal Caribbean also had knowledge of the Investment Committee's imprudence in appointing and retaining Russell, yet Royal Caribbean took no apparent action to cause the Investment Committee to timely cure its breaches. Accordingly, in addition to being directly liable for the foregoing breaches, the Royal Caribbean Defendants are also derivatively liable to the Plan for the breaches of their co-fiduciaries under 29 U.S.C. U.S.C. § 1105(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ann Johnson, as the Class representative, and on behalf of the Plan, prays for relief as follows:

A.  A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.  Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.  A declaration that Defendants have breached their fiduciary duties under ERISA;

D.  An order compelling Defendants to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties described herein, and to restore the Plan to the position it would have been in but for this unlawful conduct;

E.  Other relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate;

F.  An award of pre-judgment interest;

NICHOLS KASTER PLLP
80 South Eighth Street, Ste. 4700
Minneapolis, MN 55402

G. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine;

H. An award of such other and further relief as the Court deems equitable and just.

Dated: August 30, 2021            **SCHROETER GOLDMARK & BENDER**

By:  /s/Lindsay Halm
Lindsay Halm
810 Third Avenue, Suite 500
Seattle, Washington 98104
Telephone: 206-622-8000
Facsimile: 206-682-2305
halm@sgb-law.com


**NICHOLS KASTER, PLLP**
Paul J. Lukas, MN Bar No. 22084X*
Kai H. Richter, MN Bar No. 0296545*
Brock J. Specht, MN Bar No. 0388343*
Ben Bauer, MN Bar No. 0398853*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
krichter@nka.com
bspecht@nka.com
bbauer@nka.com


**WENZEL FENTON CABASSA, P.A.**
Brandon Hill, FL Bar No. 0037061*
1110 N Florida Avenue
Suite 300
Tampa, FL 33602
Telephone: 813-579-2483
Facsimile: 813-229-8712
bhill@wfclaw.com


**MORGAN & MORGAN**
Marc Edelman, FL Bar No. 0096342*
201 N. Franklin Street
7th Floor
Tampa, FL 33602
Telephone: 813-223-5505
Facsimile: 813-318-5162
medelman@forthepeople.com

AMENDED COMPLAINT - 29
CASE NO. 2:21-CV-00743-RSM

*admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFF